BRADLEY J. BONDI, *Pro Hac Vice*
BENJAMIN W. SNYDER, *Pro Hac Vice*
Paul Hastings LLP
2050 M St. NW
Washington, D.C. 20036
Telephone: (202) 551-1700
Facsimile: (202) 551-0201
Email: bradbondi@paulhastings.com
Email: bensnyder@paulhastings.com

RENATO MARIOTTI, State Bar No. 226447
Paul Hastings LLP
71 S. Wacker Dr., Suite 4500
Chicago, IL 60606
Telephone: (312) 499-6005
Facsimile: (312) 499-6105
Email: renatomariotti@paulhastings.com

Counsel for Defendant SUNEET SINGAL

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA
# SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    *Plaintiff*,<br><br>v.<br><br>SUNEET SINGAL,<br><br>    *Defendant*. | Case No. 2:22-CR-0068-DJC<br><br>**RULE 33 MOTION FOR NEW TRIAL**<br><br>Date: January 8, 2026<br>Time: 9:00 AM<br>Judge: Hon. Daniel J. Calabretta<br>Trial Date: June 16, 2025<br>Date Action Filed: April 7, 2022 |

# TABLE OF CONTENTS

|   |   |   | Page |
|---|---|---|---|
| BACKGROUND | | | 3 |
| ARGUMENT | | | 7 |
| I. | The Court's Deferred Ruling On When Mr. Singal Transferred Ownership Of FC Retail Prejudiced His Defense. | | 7 |
| | A. | Resolving the Contract Question After the Verdict Prejudiced Mr. Singal's Defense. | 8 |
| | B. | Because the Court Did Not Resolve the Contract Question, the Jury Instructions Were Inadequate. | 8 |
| | | 1. The Court Erred in Denying Mr. Singal's Theory of Defense. | 9 |
| | | 2. The Initial and Supplemental Instructions Left the Jury Misled and Confused, as Its Note Evinced. | 11 |
| II. | The June 9, 2017 Yellowstone Merchant Cash Application Was Improper 404(b) Evidence. | | 13 |
| CONCLUSION | | | 16 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bollenbach v. United States*,
    326 U.S. 607 (1946) ............................................................................................. 11

*McDowell v. Calderon*,
    116 F.3d 364 (9th Cir. 1997) (Trott, J., concurring and dissenting) ........................... 11

*Powell v. United States*,
    347 F.2d 156 (9th Cir. 1965) ................................................................................. 11

*United States v. A. Lanoy Alston, D.M.D., P.C.*,
    974 F.2d 1206 (9th Cir. 1992) ................................................................................. 7

*United States v. Brown*,
    880 F.2d 1012 (9th Cir. 1989) ............................................................................... 15

*United States v. Castillo-Mendez*,
    868 F.3d 830 (9th Cir. 2017) ................................................................................. 11

*United States v. Charley*,
    1 F.4th 637 (9th Cir. 2021) .................................................................................... 15

*United States v. Darby*,
    857 F.2d 623 (9th Cir. 1988) ................................................................................... 7

*United States v. Dees*,
    34 F.3d 838 (9th Cir. 1994) .................................................................................... 10

*United States v. Endicott*,
    869 F.2d 452 (9th Cir. 1989) ................................................................................... 7

*United States v. Garlick*,
    240 F.3d 789 (9th Cir. 2001) ................................................................................. 13

*United States v. Hayes*,
    794 F.2d 1348 (9th Cir. 1986) ............................................................................... 11

*United States v. Johnson*,
    459 F.3d 990 (9th Cir. 2006) ................................................................................... 9

*United States v. Keyser*,
    704 F.3d 631 (9th Cir. 2012) ............................................................................. 9, 10

*United States v. King*,
    200 F.3d 1207 (9th Cir. 1999) ............................................................................... 15

*United States v. Kramer*,
 No. 16-CR-00322-EJD-1, 2020 WL 5408165 (N.D. Cal. Sept. 9, 2020) ...................... 7

*United States v. Loftis*,
 843 F.3d 1173 (9th Cir. 2016) ............................................................................... 14

*United States v. Loftis*,
 No. CR 15-11-BU-DLC, Dkt. 40 (D. Mont. July 17, 2015) ......................................... 14

*United States v. Mason*,
 902 F.2d 1434 (9th Cir. 1990), *overruled in part on other grounds by*
 *Dixon v. United States,* 548 U.S. 1 (2006) ................................................................ 9

*United States v. Pimentel*,
 654 F.2d 538 (9th Cir. 1981) .................................................................................. 7

*United States v. Thomas*,
 612 F.3d 1107 (9th Cir. 2010) ................................................................................ 9

*United States v. Walker*,
 575 F.2d 209 (9th Cir. 1978) ........................................................................... 11, 12

*United States v. Warren*,
 25 F.3d 890 (9th Cir. 1994) ................................................................................... 11

*United States v. Whittemore*,
 776 F.3d 1074 (9th Cir. 2015) ........................................................................... 9, 10

**Other Authorities**

Fed. R. Crim. P. 33 ...................................................................................................... 6, 7

Fed. R. Crim. P. 33(a) ...................................................................................................... 7

Fed. R. Evid. 404 ....................................................................................... 2, 3, 14, 15

Even if the Court denies Suneet Singal's Rule 29 motion, it should grant him a new trial because the central issue of whether he owned First Capital Retail, LLC ("FC Retail") was never squarely put in front of the jury. By opting to address the issue of his ownership of FC Retail post-verdict, the Court ensured that Mr. Singal could not frame his defense around its ruling. Consistent with its decision to resolve this issue post-trial, the Court also opted to keep the jury in the dark about the rules of contract formation—even going so far as to prevent them from hearing Mr. Singal's proposed instructions on his theory of defense. Mr. Singal therefore was denied a fair trial.

From the outset, Mr. Singal has urged this Court to dismiss these proceedings because he did not transfer ownership of FC Retail prior to signing the merchant cash applications ("MCAs"), per the terms of the Membership Asset Purchase Agreement ("Purchase Agreement"). *See* Dkt. 45 (Def. Mot. to Dismiss); Ex. A at 14-15 (6/18/25 Tr. 139:8–140:3) (raising Rule 29 motion at close of government's case-in-chief). When it finally came time to decide how to present that issue to the jury, the Court acknowledged that it was "really on the fence about it." Ex. B at 3 (6/20/25 Tr. 8:23–24). Then, when defense counsel raised California's Statute of Frauds to argue oral modification was prohibited, the Court concluded it would deal with the contract question in whole post-verdict, explaining that the issues raised were "well beyond what we're going to ask the jury to do." *Id.* at 5 (Tr. 10:12–13).

Defense counsel complied with the Court's order. The jury did not hear about California law governing contract formation. It did not hear about concurrent conditions or condition precedents. And it did not hear about the Statute of Frauds. As limited by the Court, Defense counsel neither presented these issues to the jury, nor did the jury receive any instructions on them, because the Court determined it would resolve all these questions after trial. The parties now have reached that juncture.[1] If the Court denies Mr.

---

[1] Of course, Mr. Singal maintains that his Rule 29 motion establishes that the government failed to prove beyond a reasonable doubt that he engaged in a scheme to defraud. Specifically, no reasonable juror could have found Mr. Singal's stated

Singal's Rule 29 motion, it nevertheless should grant him a new trial in the interest of justice on two grounds.

***First***, a new trial is necessary because Mr. Singal was prejudiced by the Court's decision to resolve the contract-modification issue post-trial, which prevented him from presenting his main defense to the jury. Because the Court reserved its ruling on whether Mr. Prasad was required to complete documents per the Purchase Agreement to effectuate the sale, Mr. Singal was unable to present a defense around the Court's ruling, and the jury was not adequately instructed on the issue. Under binding Ninth Circuit precedent, a defendant is entitled to adequate instructions regarding a defense theory of the case, and Mr. Singal's argument that he could not have made a misrepresentation if he retained ownership of FC Retail was the cornerstone of his defense. But the Court rejected Mr. Singal's proposed instruction regarding contract formation and opted not to instruct the jury on that issue at all, concluding that the Rule 29 motion would resolve the issue. Without any instruction, however, the jury did not know how to assess the Purchase Agreement, as the jury's questions to the Court regarding that very topic during deliberations evinced. The Court's supplemental instruction failed to resolve the jury's confusion, which the Court itself acknowledged.

***Second***, a new trial also is necessary because the government presented evidence of a loan outside the charges in the indictment. The indictment included ten counts of mail and wire fraud, dating from April 10, 2017 to May 22, 2017. During opening statements, however, the government introduced a new transaction: the Yellowstone loan, dated June 9, 2017. Overruling defense counsel's objections, the Court allowed the jury to hear evidence regarding that loan. The Yellowstone loan was not part of the scheme alleged, and the Court erred by not conducting a Rule 404(b) analysis.

For these reasons and those that follow, if Mr. Singal's Rule 29 motion is denied, the Court should grant Mr. Singal a new trial in the interest of justice.

---

ownership of FC Retail in his MCAs was false because, as a matter of law, Mr. Singal still owned the business under the terms of the Purchase Agreement.

# BACKGROUND

Mr. Singal's concurrently filed Rule 29 motion details the relevant facts in this case, which are incorporated here. This motion further discusses two developments that illustrate how Mr. Singal was denied a fair trial.

**A. The Government Introduced Evidence of an Additional MCA Not Mentioned in the Indictment.**

In its indictment, the government alleged that Mr. Singal made six wire transfers occurring from April 12, 2017 to May 22, 2017. Indictment ¶ 14. The government also asserted that Mr. Singal caused to be delivered documents via interstate carrier on four occasions, dating from April 10, 2017 to May 18, 2017. *Id.* ¶ 16.

Those dates (April 10 to May 22, 2017) were the only dates of specific conduct alleged—until, that is, opening statements. In its opening statement, the government asserted that Mr. Singal applied for MCAs "in April, in May, ***and in June***, just a few months after the February sale." Ex. C at 3 (6/16/25 Tr. 5:20–21) (emphasis added). Prior to that, the government had not explicitly alleged any alleged fraudulent use of wire or mailing facilities occurring beyond May 18, 2017.

Defense counsel objected on the basis that any alleged criminal act in June 2017 was not charged in the indictment. Counsel explained that they had not been provided with any Rule 404(b) notice of intent to use other act evidence, and the prosecution had not sought the Court's permission to do so. Ex. C at 9 (Tr. 22:8–20). The government argued that the Yellowstone loan was alleged adequately because the indictment referenced a scheme to defraud "[b]eginning in or about March 2017, and continuing through in or about July 2017." Indictment ¶ 4.

The Court agreed with defense counsel that the June Yellowstone loan was not one of the ten specific counts, as the "counts have specific dates of wire transfer," none of which occurred past May. Ex. C at 10 (Tr. 23:18–19). The Court further acknowledged that the loan was not simply the means of the wire fraud scheme; it was ultimately "a

separate transaction." *Id.* at 13 (Tr. 26:6). On that basis, the Court prohibited the government from mentioning it, subject to a motion in limine. *Id.* (Tr. 26:18–23).

In its subsequent motion to exclude, defense counsel argued that the June loan was not a transaction that served as the basis of the criminal charge, and the government failed to provide requisite notice. Dkt. 89 at 3. Counsel further contended that the Yellowstone loan was needlessly cumulative and likely to confuse the jury. *Id.* at 3–4.

The Court denied Mr. Singal's motion. Ex. A at 2 (Tr. 3:8–10). It held that the indictment alleged that the scheme continued through July 2017, and thus the June 9, 2017 loan fell within the timeframe alleged. *Id.* (Tr. 3:11–14). The Court agreed that there was "some prejudicial value, certainly," but determined that the prejudice to Mr. Singal did not "substantially outweigh[] the probative value in light of the fact that the scheme itself is an element." *Id.* at 3 (Tr. 4:4–6). The government proceeded to enter into evidence the June Yellowstone loan and present testimony from Tvsi Davis about that later loan. *See* Ex. D (Gov. Ex. 216); Ex. A at 6-8 (Tr. 50:6–52:7).

**B. The Court Did Not Present Defendants' Theory of Defense or Any Substantive Contract Instruction in Its Instructions.**

Throughout trial, a central theme of Mr. Singal's defense was that (i) Mr. Prasad did not meet his contractual obligations when he signed the Purchase Agreement and (ii) Mr. Singal did not transfer membership to Mr. Prasad until he did. As a result, Mr. Singal's statements that he owned FC Retail in his MCAs were accurate. To support his argument, Mr. Singal proposed instructions on contract formation under California law, which the government opposed. Dkt. 94.

The Court spent significant time deliberating how to resolve the issue during trial. The Court first discussed the defense's proposed contract-formation instructions on the second day of trial, acknowledging that "at this point I'm inclined to include them, that seems to be the fundamental basis for the defense." Ex. E at 3 (6/17/25 Tr. 191:3–4). The Court reasoned that "just the fact that the documents were signed later on, to me, is probably enough evidence to warrant giving those instructions." *Id.* (Tr. 191:5–7). The

next day, the Court remarked it could "imagine the jury, you know, having to sort [whether contractual terms have been satisfied] out." Ex. A at 11 (Tr. 104:1–2).

On the fourth day of trial, the Court acknowledged that it still was "really on the fence about" providing Mr. Singal's proposed contract instructions. Ex. B at 3 (Tr. 8:24). The Court observed that, contrary to the government's cited authority, if "the contract had not been completed" in the present case, Mr. Singal "was still the owner, therefore, as a matter of law, no fraud." *Id.* at 4 (Tr. 9:9–10). The Court expressed concern that "if [it] is a legal issue we're just going to confuse the jury." *Id.* at 9 (Tr. 14:21–23). Conversely, the Court recognized that factual issues also were at play—namely, whether Mr. Singal had a good-faith belief that the Purchase Agreement had not been completed at the time he made his statements in the MCAs. *Id.* at 7 (Tr. 12:12–19); *see id.* at 12 (Tr. 71:6–7) ("there is a factual issue there, and it does go to the heart of the case").

The Court concluded that the contract issue likely was "a legal issue for the Court to resolve and not really a jury question anyway," and requested full briefing from defense counsel post-verdict. Ex. B at 7 (Tr. 12:10–11). Defense counsel agreed to provide such briefing, with the understanding that the Court would resolve the issue through a Rule 29 motion. *Id.* at 8 (Tr. 13:25–14:2).

The trial, however, was not over at that point. Realizing the jury required at least some instruction regarding contract formation, Mr. Singal submitted instructions supporting his theory of defense. Specifically, he proposed the following instruction:

> The Defendant has raised a defense asserting that on the dates charged in the Indictment Suneet Singal was, in fact, the owner of the entity known as First Capital Retail because certain contractual requirements to close the sale transaction had not been performed by Ramesh Prasad until a date after the period of time when Mr. Singal applied for the Merchant Cash Advance loans at issue in this case. Mr. Singal's defense asserts that the provisions of Section 2.2.2 of the Membership Interest Purchase Agreement were not satisfied as of February 23, 2017 or on any date charged in the Indictment, therefore his claims of ownership to the lenders were true, and cannot constitute fraud.

Dkt. 96 at 2. Defense counsel explained that the proposed instruction would inform the jury that Mr. Singal could be considered the legal owner of FC Retail "without having to open up the can of worms that giving a seminar on contract law to the jury would have entailed." Ex. F at 3 (6/23/25 Tr. 4:14–16).

The Court rejected that instruction over defense counsel's objections, and in doing so ensured the jury did not receive critical instructions regarding the Purchase Agreement. *See* Ex. F at 3-4 (Tr. 4:23–5:13) (the Court stating "we've removed any contract related instructions"). The parties delivered their closing statements, and the jury retreated to decide Mr. Singal's fate.

Deliberations proceeded for approximately 3.5 hours before the jury returned with two questions. Those questions focused on precisely the issue Mr. Singal had emphasized to the Court: contract formation. The jury pointedly asked:

> Is there a government code section that provides when a contract is closed? If so, can you please provide us with the code section for review. Additionally, if a contract is predated, is it considered completed on the signature date or date of all required documents?

Dkt. 100. Surprisingly, the Court remained reticent to give "any substantive contract law instruction," with the Rule 29 motion looming. Ex. F at 7 (Tr. 59:18–20). The parties settled on a CACI 314 instruction: "In deciding what the words of a contract mean, you must decide what the parties intended at the time the contract was created. You may consider the usual and ordinary meaning of the language used in the contract, as well as the circumstances surrounding the making of the contract." *Id.* at 7-8 (Tr. 59:21–60:2).

After reading that instruction to the jury, the Court conceded, "I know that doesn't completely answer your question, but that's the answer I could give you." Ex. F at 11 (Tr. 63:19–20). An hour later, the jury returned with its verdict. Mr. Singal now files his Rule 33 motion concurrently with his Rule 29 motion.

**ARGUMENT**

Under Rule 33(a) of the Federal Rules of Criminal Procedure, a court may grant a motion for new trial "if the interest of justice so requires." "The district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." *United States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206, 1211 (9th Cir. 1992) (citation omitted). "If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." *Id.* at 1211–12 (citation omitted).

"A motion for a new trial under Rule 33 may be granted for failure to give proper jury instructions." *United States v. Kramer*, No. 16-CR-00322-EJD-1, 2020 WL 5408165, at *5 (N.D. Cal. Sept. 9, 2020). The burden of justifying a new trial rests with the defendant, *United States v. Endicott*, 869 F.2d 452, 454 (9th Cir. 1989), and "[a] motion for new trial is directed to the discretion of the district judge," *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981).

**I. The Court's Deferred Ruling On When Mr. Singal Transferred Ownership Of FC Retail Prejudiced His Defense.**

The contract question here is a legal one: Did Mr. Singal own FC Retail when he submitted the MCAs? Mr. Singal's Rule 29 motion establishes the answer is yes, which means that he did not make any false statement. But if the Court finds otherwise, Mr. Singal never had the opportunity to frame his defense around the Court's decision, including the Court's view of California contract law. Most concerning, Mr. Singal was unable to put the issue before the jury, and the resulting instructions did not reflect this Court's view regarding the relevant contract-law issue and were "inadequate to guide the jury's determination." *United States v. Darby*, 857 F.2d 623, 624 (9th Cir. 1988) (overturning conviction where jury was misled by ambiguous instructions).

A.  **Resolving the Contract Question After the Verdict Prejudiced Mr. Singal's Defense.**

The Court's decision to postpone any ruling on whether Mr. Singal legally transferred ownership of FC Retail *after* the MCAs—a defense he raised as early as October 2024—prejudiced him at trial. On the eve of closing arguments, the Court determined it would settle the dispute surrounding the Purchase Agreement after the verdict and it would not instruct the jury on the issue. Defense counsel proceeded within those parameters. But if the Court now rules against Mr. Singal on his Rule 29 motion, then his defense materially suffered in two respects meriting a new trial.

First, if the Court finds as a matter of law that Mr. Singal delivered ownership of FC Retail to Mr. Prasad prior to entering into the MCAs, then Mr. Singal was prejudiced for not knowing the Court's ruling at any point during trial when mounting his defense. Defense counsel were unable to present an adequate defense based on these issues because they were left in the dark regarding what the Court would determine the law held. Resolving this question of law against Mr. Singal only after the jury reached its verdict, when Mr. Singal's defense could not take into account the court's ruling on this issue, is fundamentally unfair.

Second, if the Court finds that the question of when FC Retail passed to Mr. Prasad is a mixed question of law and fact, then the jury was not properly instructed regarding that issue. In fact, the jury received no instructions regarding contract formation whatsoever, and it never heard about the Statute of Frauds. Without any proper instruction, the jury was left with inadequate guidance to engage in its deliberations—as its questions to the Court made clear.

B.  **Because the Court Did Not Resolve the Contract Question, the Jury Instructions Were Inadequate.**

After the Court decided it would address Mr. Singal's contract theory in a post-verdict Rule 29 motion, Mr. Singal was placed in a difficult position. On one hand, defense counsel agreed that the charges could and should be dismissed as a matter of law. On

the other hand, they still had a trial to complete and a jury to instruct. Despite Mr. Singal's best efforts to put the issue before the jury, the Court's rulings on the jury instructions prejudiced him. A new trial is necessary to ensure a fair verdict.

### 1. The Court Erred in Denying Mr. Singal's Theory of Defense.

Because the jury was not going to be instructed on any contract law, defense counsel sought to present a theory of defense. "A defendant is entitled to have the judge instruct the jury on his theory of defense, provided that it is supported by law and has some foundation in the evidence." *United States v. Mason*, 902 F.2d 1434, 1438 (9th Cir. 1990), *overruled in part on other grounds by Dixon v. United States,* 548 U.S. 1 (2006). The Court, however, rejected that argument in whole.

A defendant seeking to challenge a court's decision to deny his defense theory must show: "(1) that his theory has some foundation in evidence; (2) that it is supported by law; and (3) that the given instructions did not adequately encompass his theory." *United States v. Whittemore*, 776 F.3d 1074, 1078 (9th Cir. 2015). The standard for whether proposed instructions have evidentiary foundation in the Ninth Circuit is "generous." *United States v. Thomas*, 612 F.3d 1107, 1121 (9th Cir. 2010) (quoting *United States v. Kayser*, 488 F.3d 1070, 1076 (9th Cir. 2007)). Courts in this circuit have "repeatedly stated that the defendant is entitled to his proposed instruction even if his evidence is 'weak, insufficient, inconsistent, or of doubtful credibility.'" *United States v. Johnson*, 459 F.3d 990, 993 (9th Cir. 2006) (citation omitted).

The proposed defense theory should have been read to the jury. ***First***, Mr. Singal's defense that he had not transferred ownership of FC Retail when he signed the MCAs obviously had foundation in evidence—it was the cornerstone of his defense. The Court itself acknowledged this fact, at one point even stating that it was inclined to include contract instructions because "that seems to be the fundamental basis for the defense." Ex. E at 3 (Tr. 191:3–4).[2]

---

[2] The Court's later reliance on *United States v. Keyser*, 704 F.3d 631, 642 (9th Cir. 2012) in barring this instruction was misplaced. In *Keyser*, the Ninth Circuit held that Mr.

***Second***, Mr. Singal's argument has a wealth of legal support, as his Rule 29 motion establishes in extensive detail. *See* Post-Verdict Rule 29 Motion for Acquittal, filed concurrently, p. 9–16.

***Third***, the given instructions did not "adequately encompass" Mr. Singal's theory. *Whittemore*, 776 F.3d at 1078. In fact, the instructions made no mention of contract formation at all, Mr. Singal's objections notwithstanding. In compliance with the Court's decision to wait until after trial to resolve the issue, Mr. Singal withdrew his proposed jury instructions on contract formation. *See* Dkt. 96 at 1. Nonetheless, the jury needed signposts during deliberations regarding contract formation, and defense counsel did everything possible to provide such instruction. Such an instruction was necessary, as the question of contract formation ultimately determined whether the government could prove that Mr. Singal made false statements beyond a reasonable doubt.

Strikingly, the Court's ruling left the jury with **no contract instruction at all**. The Court reasoned that a mere good-faith instruction would encompass the contractual complexities here. Ex. F at 3 (Tr. 4:2–9). Yet Mr. Singal's proposed instruction had nothing to do with what he ***believed***. Rather, the proposed instruction informed the jury that it could consider whether Mr. Singal transferred ownership to Mr. Prasad subsequent to completing the MCAs, such that there was no misrepresentation.[3] Without that

---

Keyser's defense theory placed undue emphasis on his version of the facts regarding intent rather than legal principle, which the jury was provided. *Id.* Here, however, the jury was not provided with legal principle, because the instructions made no mention of basic contract principles—only wire and mail fraud instructions. The jury's subsequent questions on contract formation are evidence of this.

[3] The Court's reliance on *United States v. Dees*, 34 F.3d 838 (9th Cir. 1994) during trial was inapposite. In *Dees*, a woman was charged with wire fraud after contracting with two couples to adopt her unborn child in exchange for expenses, despite having no intention of letting either couple adopt. *Id.* at 840. At trial, the jury asked whether a verbal agreement was binding. *Id.* at 843. The court responded that while a verbal agreement was in fact binding, that was not a question for the jury to decide; rather, it was whether the defendant made a promise that she knew was false. *Id.* "This does not involve the question of a breach of contract." *Id.* As the Ninth Circuit correctly concluded, the formation of a contract had no bearing on whether the defendant ultimately made a false promise. *Id.* By contrast here, all parties appear to agree that whether the contract had been completed per its terms prior to the MCAs necessarily decides whether there was a misrepresentation.

information, the remaining instructions were inadequate and left the jury unable to answer a fundamental question central to Mr. Singal's defense.

### 2. The Initial and Supplemental Instructions Left the Jury Misled and Confused, as Its Note Evinced.

Without an instruction on contract formation, the jury lacked necessary guidance regarding how to evaluate the evidence. Its questions during deliberations confirmed that it did not know how to evaluate the issues the Court had reserved for its post-trial decision.

The Ninth Circuit has underscored repeatedly the importance of clarity in jury instructions. "[T]he district court has the responsibility to eliminate confusion when a jury asks for clarification of a particular issue." *United States v. Hayes*, 794 F.2d 1348, 1352 (9th Cir. 1986). Thus, "[w]hen a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy." *Bollenbach v. United States*, 326 U.S. 607, 612–13 (1946). "It is no answer to say that the supplemental instruction was correct, so far as it went; or that it was to be read in the light of the original instructions and that these fairly presented the issues." *Powell v. United States*, 347 F.2d 156, 158 (9th Cir. 1965). Rather, courts must "consider whether the instructions—taken as a whole and viewed in context of the entire trial—were misleading or confusing, inadequately guided the jury's deliberations, or improperly intruded on the fact finding process." *United States v. Warren*, 25 F.3d 890, 898 (9th Cir. 1994) (overturning conviction where juror note demonstrated confusion over premeditation instructions); *see also McDowell v. Calderon*, 116 F.3d 364, 366 (9th Cir. 1997) (Trott, J., concurring and dissenting) (emphasizing the court's "duty to respond to the jury's request with sufficient specificity to clarify the jury's problem").

As here, where a district court's supplemental instruction "fail[s] to clear away jury confusion with its answer," an appellate court must "reverse and remand for a new trial." *United States v. Castillo-Mendez*, 868 F.3d 830, 839–40 (9th Cir. 2017) (reversing conviction where the "jury was likely confused about this singularly important issue, and the district court's confusing and legally inaccurate supplemental instruction failed to remove this confusion"). For example, in *United States v. Walker*, 575 F.2d 209, 213 (9th

1 Cir. 1978), a defendant was convicted of theft within the maritime jurisdiction. The jury
2 inquired whether the defendant needed to have intent within the maritime jurisdiction. *Id.*
3 The court responded that the offense needed to be committed "within the special maritime
4 and territorial jurisdiction of the United States," which it then defined. *Id.* On appeal, the
5 Ninth Circuit held that the supplemental instructions did not resolve juror confusion about
6 what to do if it found the defendant formed the criminal intent to steal the craft after leaving
7 the jurisdiction, which in turn enlarged the indictment's scope. *Id.* at 214. The court
8 concluded that, despite being legally correct, the supplemental instruction was ultimately
9 "confusing" when viewed in light of the jury's question, such that it prejudiced the
10 defendant, and necessitated reversing his conviction. *Id.*

11 Similarly in this case, the instructions (both initial and supplemental) were
12 inadequate to guide the jury on the issues presented at trial and left them looking for
13 answers. Not long into its deliberations, the jury sought guidance regarding when a
14 contract has closed and when a contract is considered complete—precisely the issues the
15 Court had deferred for post-verdict briefing. Dkt. 100. The supplemental instructions
16 intentionally did nothing to address those issues, because the Court had already reserved
17 them for a post-verdict ruling. The instructions instead provided an inadequate general
18 statement on contract law from the Judicial Council of California Civil Jury Instructions.
19 *See* Dkt. 99, Inst. 26; Ex. F at 7 (Tr. 59:21–22). But, as the Court itself recognized to the
20 jury, Instruction No. 26 "[didn't] completely answer your question, but that's the answer I
21 could give you." *Id.* at 11(Tr. 63:19–20).

22 The importance of instructing the jury on contract formation, especially once it
23 became clear they were at a loss, cannot be overstated here. First, the jury needed
24 guidance to determine whether Mr. Singal actually owned FC Retail when he stated as
25 much in his MCAs. The entire case hinged on that determination—but the jury lacked a
26 scintilla of instruction to navigate it. For example, if the Court determines that the Statute
27 of Frauds did not apply here and the parties could modify the contract orally, then the jury
28 would have needed instruction regarding how parties can modify contractual obligations

orally. Otherwise, how could they determine whether Mr. Prasad and Mr. Singal agreed to supersede § 2.2.2 of the Purchase Agreement? Similarly, if the Court holds Mr. Singal could have transferred ownership of FC Retail at some point prior to receiving Mr. Prasad's documents as required by § 2.2.2, then the jury would have needed instructions regarding when a contract may be considered complete. And in fact, these were the very questions the jury asked. *See* Dkt. 100. But while its verdict necessarily turned on these questions, the jury lacked the information necessary to answer them correctly.

Jury instructions addressing the modification of the Purchase Agreement necessarily would have colored the jury's determination of whether Mr. Singal had a good-faith belief that he owned FC Retail when he stated such in the MCAs. If the jury had been instructed on contract formation, it could have ascertained whether Mr. Singal actually had a good-faith reason to believe he owned FC Retail. The Court's good-faith defense instruction, without more, was insufficient to guide the jury on this question and limited the defense's ability to argue these issues in its closing argument.

Ultimately, the jury remained uninformed notwithstanding its direct questions—*e.g.*, asking for a "government code section that provides when a contract is closed." Dkt. 100. Those questions underscore that the contractual question in this case was a complicated one, and one that ultimately confounded the jury. That shortfall can be corrected, and in the interest of justice the Court should afford Mr. Singal a new trial before a properly instructed jury.

**II.  The June 9, 2017 Yellowstone Merchant Cash Application Was Improper 404(b) Evidence.**

The government should not have been permitted to present evidence of a distinct loan not included in the ten counts of wire fraud.

Each mailing and use of the wires under the mail and wire fraud statutes, respectively, "constitutes a separate offense." *United States v. Garlick*, 240 F.3d 789, 792 (9th Cir. 2001). The Yellowstone loan was not part of the Government's alleged scheme. That loan, which postdated the other ten delineated in the indictment, was "other act"

evidence, or evidence of other crimes and wrongs that the government improperly used to prove criminal disposition.

At trial, the Court rejected Mr. Singal's motion to exclude the Yellowstone loan. In support, the Court relied on *United States v. Loftis*, 843 F.3d 1173 (9th Cir. 2016). Ex. A at 2-3 (Tr. 3:6–4:7). But *Loftis* is not applicable. In *Loftis*, the government alleged the defendant "victimized investors through false representations about his oil business." 843 F.3d at 1175. The indictment charged "a broad scheme to defraud, spanning six years, several states, and numerous alleged victims." *Id.*; *see* Ex. G (*United States v. Loftis*, No. CR 15-11-BU-DLC, Dkt. 40 (D. Mont. July 17, 2015) (second superseding indictment)). As for the specific counts, the government alleged five uses of the wires involving three investors in Montana. *Id.* When the trial drew nearer, the government sought to introduce evidence of investor victims not named in the indictment, along with additional uses of the wires in States other than Montana. *Id.* The Court held that because the indictment specifically had alleged a broad scheme to defraud across numerous States, the government could admit evidence to prove the scheme. *Id.* at 1176. And in any event, that evidence was an "other act" inextricably intertwined to the crime charged. *Id.* at 1177. On those bases, the court declined to conduct a Rule 404(b) analysis.

Here, in contrast, the scheme alleged in the indictment focused on the specific MCAs Mr. Singal signed in April and May 2017. *See* Indictment ¶¶ 14, 16. Beyond a passing reference to a scheme "continuing through in or about July 2017," the June 9, 2017 Yellowstone loan was otherwise unrelated to the scheme alleged; neither the date nor the amount of the loan make any appearance in the indictment. *Id.* ¶ 4. Defense counsel was startled to hear the government mention that specific loan during its opening statement. Ex. C at 9-10 (Tr. 22:8–23:2).

Because that loan was not part of the scheme but instead a distinct transaction, the Court was obligated to conduct a Rule 404(b) analysis. "Rule 404 of the Federal Rules of Evidence prohibits evidence about a defendant's character trait to prove that the defendant committed the charged crime when he acted in accordance with that character

trait." *United States v. Charley*, 1 F.4th 637, 640 (9th Cir. 2021). The rule is rooted in the "basic premise of our criminal justice system" that "[o]ur law punishes people for what they do, not who they are." *Id.* (quoting *Buck v. Davis*, 580 U.S. 100, 123 (2017)). It helps to "avoid 'a danger that the jury will punish the defendant for offenses other than those charged, or at least that it will convict when unsure of guilt, because it is convinced that the defendant is a bad man deserving of punishment.'" *United States v. Brown*, 880 F.2d 1012, 1014 (9th Cir. 1989) (citation omitted).

Evidence of bad acts is admissible, then, only if (1) there is sufficient evidence for the jury to conclude the defendant committed the prior bad act, (2) the act was not too remote in time from the commission of the charged offense, (3) the act is similar to the charged offense, (4) the act is introduced to prove an element of the charged offense that is a material issue in the case, and (5) the act's probative value is not outweighed by its potential prejudice. *United States v. King*, 200 F.3d 1207, 1214 (9th Cir. 1999).

The Court never conducted that analysis. Instead, it held that the June Yellowstone loan was relevant to the scheme to defraud and therefore was not an "other bad act[]." *See* Ex. A at 2 (Tr. 3:15–19). The Court then summarily dismissed Mr. Singal's Rule 404(b) argument, focusing only on Rules 401 and 403 rather than properly weighing the first four factors of the Rule 404(b) analysis. *See id.* (Tr. 3:20–22) ("Regarding the 404(b) argument, I don't conclude that those two exhibits, that their prejudicial impact substantially outweighs the probative value.").

The Court's decision was erroneous and can be cured only by a new trial. The June loan's probative value was *de minimis* given that the government had eight other charged offenses for the use of interstate mail and wire on which it could and should have rested its argument. And its prejudicial impact was great. The government used the Yellowstone loan to prejudice Mr. Singal and paint him as a criminal with a natural tendency to defraud lenders. Ex. A at 3 (Tr. 4:4–6) (Court acknowledging the evidence's "prejudicial value" in its ruling). *See United States v. Brown*, 880 F.2d 1012, 1016 (9th Cir. 1989) (vacating

conviction because "[d]espite the other evidence against [the defendant]," the "continued references to [his] prior bad acts" may have impacted jury's verdict).

Most problematic, the timing of the June 9 Yellowstone loan unduly prejudiced Mr. Singal in presenting the sequence of events to the jury. In light of the indictment, counsel prepared a defense emphasizing that Mr. Singal signed the MCAs in April and May 2017, only to transfer ownership of FC Retail later that summer, sometime after Mr. Prasad's attorneys circulated drafts of the required documents on June 6, 2017. *See, e.g.,* Ex. C at 6 (Tr. 16:10–23). The June 9, 2017 loan confused that narrative because it postdated the circulation of those drafts. But even if Mr. Prasad had somehow signed and completed those drafts between June 6 and June 9—which the government never argued and presented no evidence in support, to be clear—that would still make no difference, because the eight counts of wire and mail fraud all pre-dated June 6, 2017. The June 9 loan therefore only served to confuse the jury on the timeline of events. The Court should grant Mr. Singal's motion for a new trial on these grounds also.

## CONCLUSION

For these reasons, should the Court deny Mr. Singal's Rule 29 motion, it should vacate the jury's verdict and grant a new trial in the interest of justice.

DATED this 4th day of November 2025.

PAUL HASTINGS LLP

By: /s/ Bradley J. Bondi

| | |
|---|---|
| Bradley J. Bondi (#465132 (D.C.)) (*Pro Hac Vice*) Benjamin W. Snyder (#1020481 (D.C.)) (*Pro Hac Vice*) PAUL HASTINGS LLP 2050 M Street NW Washington, D.C. 20036 Telephone: 202.551.1700 Facsimile: 202.551.0201 | Renato Mariotti (#226447 (CA)) PAUL HASTINGS LLP 71 S. Wacker Dr., 45th Floor Chicago, IL 60606 Telephone: 312.499.6005 Facsimile: 312.499.6105 |

*Attorneys for Defendant Suneet Singal*